IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY SAVAGE                          :        CIVIL ACTION
                                     :
        v.                           :
                                     :
WEXFORD HEALTH SOURCES, INC.         :        NO. 16-2923


                              MEMORANDUM

Bartle, J.                                    November 21, 2017

      Plaintiff Gary Savage, an inmate incarcerated by the Commonwealth of Pennsylvania, brings this civil rights action under 42 U.S.C. § 1983 against Wexford Health Sources, Inc., the private corporation responsible for providing medical treatment at the state correctional facility where Savage was housed. Before the court is the motion of Wexford for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

                                  I

      Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find

for the nonmovant.  See id. at 252.  We view the facts and draw all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

II

The following facts are undisputed or viewed in the light most favorable to Savage, the nonmoving party.  Savage was confined to various Pennsylvania State Correctional Institutions ("SCI") from 2008 to 2012.  In 2009, during his incarceration, he was diagnosed with obstructive sleep apnea following a sleep study.  This condition causes Savage to stop breathing at repeated intervals while sleeping.  After being diagnosed, the prison provided him with a Continuous Positive Airway Pressure ("CPAP") Machine.  This machine pushes air into Savage's lungs, thereby keeping his airways open and allowing him to breathe regularly while sleeping.  Savage received the machine approximately two weeks after the sleep study was conducted.  After being paroled in 2012, Savage was able to take the CPAP machine with him.

Savage began his state confinement that is the subject of the instant litigation on November 13, 2013, when he was transferred from the Philadelphia prison system to SCI-Graterford.  As reflected in both Savage's initial intake paperwork and the records of his medical examination on that

date, Savage notified staff that he suffered from sleep apnea and had used a CPAP machine at home. Savage did not have a CPAP machine while incarcerated in the Philadelphia prison for approximately two months prior to his transfer to Graterford.

According to Savage, while at Graterford he repeatedly informed staff that he suffered from sleep apnea and needed a CPAP machine. In response, Savage was told either that he did not need such machine or that the prison did not have the money to order the machine. On February 12, 2014, Savage was seen at the prison clinic for hypertension, at which time he reported to a nurse that he needed a CPAP machine. Following her assessment of Savage, the nurse submitted a request to order a CPAP machine through a Wexford "Non-Formulary Approval Request" Form. On the form the nurse wrote that Savage had received a CPAP machine during his previous state imprisonment, and she attached Savage's 2009 sleep study.

Later on March 18, 2014, after not having received a CPAP machine, Savage filed an initial administrative grievance with the prison. In his grievance Savage complained that he intermittently stopped breathing while sleeping and suffered seizures as a result of his sleep apnea. He further stated that he needed a CPAP machine.

On or about March 26, 2014, the nurse who previously submitted on Savage's behalf the request for a CPAP machine

learned that the "Non-Formulary Approval Request" process was intended for prescription drugs. The request for the CPAP machine instead had to go through Wexford's "Collegial Review" for medical devices. On April 3, 2014, the nurse submitted the request through the proper channels. The request was approved by a Wexford Clinical Coordinator four days later, on April 7, 2014.

On April 11, 2014, the prison issued its response to Savage's initial administrative grievance. The grievance was "upheld" in Savage's favor. In particular, the initial review response states: "According to the record your machine has been approved and it has to be ordered. You will be notified when it arrives."

That same day Savage was seen at sick call with complaints of swollen ankles lasting more than four days. The nurse noted that Savage had sleep apnea and had been approved for a CPAP machine. The next day, on April 12, 2014, Savage was brought to the prison dispensary via wheelchair after falling out of bed while trying to sleep. The nurse stated that Savage was "hard to keep awake." According to Savage's cell mate, this daytime drowsiness was normal for Savage due to his sleep apnea. Savage's swelling had increased, and he complained of pain and itching. Thereafter, Savage was transferred to a local hospital

emergency room, where he was diagnosed with peripheral edema and congestive heart failure.

Meanwhile, the request for Savage's CPAP machine continued through the bureaucratic channels of Wexford. Wexford received an invoice from the distributor for the CPAP machine on April 25, 2014 and paid the invoice on April 30, 2014.

Despite the ruling on Savage's initial grievance, weeks passed and Savage still did not receive his CPAP machine. On May 18, 2014, Savage appealed directly to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). In that appeal Savage wrote that his initial review response was "uphold." He further stated:

> a c-pap machine was ordered signed 4/11/14. Today is May 16, 2014 initial grievance was 3/18/14 so I am experiencing seizure every night, wake up with my tongue swollen and struggling to breath [sic]. I am not receiving proper treatment and I cannot lay down to go asleep. I ask that action be taken to acquire this machine on a emergency.

On June 1, 2014, while his SOIGA appeal was still pending, Savage finally received his CPAP machine. On June 3, 2014, Savage was transferred to SCI-Somerset. The transfer sheet shows that he was transferred with his CPAP machine. On June 5, 2014, SOIGA dismissed Savage's appeal without consideration on the ground that Savage had failed first to appeal to the facility manager as required under prison policy.

Savage took no further action. Savage explained in his deposition here that the prison grievance coordinator instructed him not to re-file his grievance with the facilities manager, as instructed by SOIGA, because he had already received the machine.[1]

Savage instituted this action on June 13, 2016 and filed an amended complaint on November 14, 2016. In the amended complaint, Savage brings one count against Wexford under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights. Savage alleges that due to Wexford's delay in providing a CPAP machine, he suffered severe harm, including seizures, the development of chronic obstructive pulmonary disease ("COPD"), insomnia, pain and suffering, and emotional distress. He seeks damages, attorney's fees and costs, and other relief as permitted by law.

We previously denied the motion of Wexford to dismiss the amended complaint. Wexford had contended that Savage failed to exhaust his administrative remedies and that his claims were barred by the statute of limitations. In denying the motion, we

---

1. Savage filed a second administrative grievance on March 8, 2016 raising several issues related to his medical care while incarcerated. This second appeal was not exhausted until October 12, 2016, after Savage initiated suit in this court. Savage does not assert that this grievance could serve as administrative exhaustion for this litigation, and therefore we will not consider it.

stated that further discovery regarding Savage's attempts to exhaust administrative relief was necessary.

III

Wexford first argues that we must grant its motion for summary judgment on the ground that Savage failed to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA") before filing this action in federal court. The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense the defendant must plead and prove. Small v. Camden Cty., 728 F.3d 265, 268-69 (3d Cir. 2013). Our Court of Appeals has stated that "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." Id. at 269 (citing Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010)).

Exhaustion of administrative remedies is mandatory and applies to all prisoners seeking redress for any prison condition or occurrence. Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000). However, prisoners need not exhaust administrative remedies if they are not "available," that is if

-7-

the remedies are not capable of providing relief.  <u>Shumanis v. Lehigh Cty.</u>, 675 F. App'x 145, 148 (3d Cir. 2017) (quoting <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1855, 1859 (2016)).  An administrative procedure is unavailable whenever:  (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that is becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  <u>Id.</u> (quoting <u>Ross</u>, 136 S. Ct. at 1859-60).

To exhaust administrative remedies properly, prisoners must complete the administrative review process in accordance with the applicable procedural rules, "rules that are defined not by the PLRA, but by the prison grievance process itself." <u>Small</u>, 728 F.3d at 272 (quoting <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007)).  Thus, the determination of whether a prisoner has properly exhausted his administrative remedies "is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials." <u>Spruill v. Gillis</u>, 372 F.3d 218, 222 (3d Cir. 2004).

Wexford contends while Savage initiated the grievance process in March 2014 he did not appeal that grievance to final

-8-

review and therefore cannot maintain this lawsuit.  This argument fails.  Savage's initial grievance was upheld.  The prison administrator found in his favor and stated that the CPAP machine must be ordered.  As a result, Savage had exhausted his administrative remedies and was under no further obligation to continue the appeal process.  There is no need for a prisoner to proceed further when he wins his grievance any more than a litigant needs to appeal when he or she wins in the trial court.

In any event, Savage did in fact appeal his grievance after weeks passed and he had not yet received his CPAP machine.  As stated above, Savage's appeal was dismissed without consideration on the ground that he had appealed directly to SOIGA without first appealing to the prison facility manager as required under prison policy.  Savage received the SOIGA ruling on June 5, 2014, after he had received the CPAP machine, and was instructed by the prison grievance coordinator that he could no longer pursue the appeal because he had already received the machine.  Savage was entitled to rely on the statement of the grievance coordinator.  See Shumanis, 675 F. App'x at 148; Brown v. Croak, 312 F.3d 109, 112–13 (3d Cir. 2002).

Wexford also asserts that Savage did not properly exhaust administrative remedies because he failed to request monetary relief in his grievance.  The form on which Savage submitted his grievance merely instructs the inmate to "[s]tate

all relief that you are seeking." Without more, this brief instruction was insufficient to put Savage on notice of any need to request specifically monetary relief. Absent language requiring a prisoner to request any monetary damages as part of the administrative grievance, a failure to request such relief does not preclude a later claim for money damages. See Spruill, 372 F.3d at 233-34.

In sum, Savage exhausted his administrative remedies. Accordingly, we decline to grant summary judgment in favor of Wexford for his failure to do so.[2]

IV

Wexford also challenges the substance of Savage's Eighth Amendment claim under § 1983. The Eighth Amendment, which is made applicable to the states through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners" constitutes a violation of that constitutional proscription. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To

---

2. Wexford also cites to an Inmate Grievance System Policy issued by the Pennsylvania Department of Corrections that states: "If inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." This policy became effective May 1, 2015, over a year after Savage filed his administrative grievance. Neither party has submitted for this court's review the policy that was in effect during the relevant time period. Therefore, we will not consider this evidence.

establish a violation of his constitutional right to adequate medical care, Savage must demonstrate: (1) "a serious medical need"; and (2) "acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference may be manifested by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104–05. This is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." Natale, 318 F.3d at 582 (quoting Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)). It requires that the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Negligence is not sufficient to constitute an Eighth Amendment violation. Id. at 835, 836.

Savage has raised a genuine dispute of material fact as to whether Wexford provided him with adequate medical care for a serious medical need. We agree with other courts that sleep apnea, which causes him repeatedly to stop breathing while sleeping, is a potentially life-threatening disorder and qualifies as a serious medical need. See Meloy v. Schuetzle, No. 99-2122, 2000 WL 1160446, at *1-2 (8th Cir. 2000); Ross v. Westchester Cty. Jail, No. 10-3937, 2012 WL 86467, at *5

(S.D.N.Y. Jan. 11, 2012); Dortch v. Davis, No. 11-0841, 2014 WL 1125588, at *5 (S.D. Ill. Mar. 21, 2014); Allah v. Gramiak, No. 13-186, 2015 WL 269478, at *4 (M.D. Ga. Jan. 21, 2015).

We also conclude that Savage has raised a genuine dispute of material fact regarding whether Wexford was deliberately indifferent to this serious medical need. There is evidence in his prison medical records that Savage was prescribed a CPAP machine during his 2008 to 2012 incarceration and that Wexford personnel knew or should have known as early as November 2013 that Savage needed such machine. Nonetheless, Wexford failed to provide the machine to Savage until over six months later, in June 2014.

We also reject Wexford's argument that summary judgment should be granted because Savage failed to produce expert testimony. There is no per se requirement for expert testimony in all Eighth Amendment inadequate medical care claims. Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017). Expert testimony is not necessary where "the seriousness of injury or illness would be apparent to a lay person." Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987). Other forms of extrinsic proof, such as medical records, may be sufficient to enable a jury to determine whether the plaintiff's medical need is serious. Pearson, 850 F.3d at 535. As to the question of deliberate indifference, there is a

"critical distinction" between claims alleging a delay or denial of a recognized need for medical care and those alleging inadequate medical treatment. Id. (quoting United States ex. rel. Walker v. Fayette Cty., 599 F.2d 573, 575 n.2 (3d Cir. 1979)). A claim alleging the delay or denial of medical treatment requires inquiry into the subjective state of mind of the defendant and the reasons for the delay, which like other forms of scienter can be proven through circumstantial evidence and witness testimony. Id.

As discussed above, Savage has produced medical records showing that he was diagnosed with obstructive sleep apnea and that such condition causes him to stop breathing repeatedly while sleeping. Savage was previously prescribed a CPAP machine while imprisoned in 2009. Wexford's own staff agreed with that assessment and eventually ordered the CPAP machine. Savage challenges not the adequacy of his medical care, but rather the delay in receiving medical care, that is the CPAP machine. Under these circumstances, we cannot say at this time that expert testimony is necessary for Savage to proceed with his claim.

V

Finally, Wexford asserts that Savage has failed to produce evidence that it has an official policy or custom which caused a deprivation of Savage's rights. Like a municipality, a

corporation such as Wexford cannot be held liable under § 1983 for the acts of its employees under a respondeat superior theory.  It may be held liable, however, if an official policy or custom of Wexford caused the deprivation of plaintiff's rights.  See Natale, 318 F.3d at 583-84.

   Here, Savage asserts that Wexford had a policy or custom to:  (1) withhold medical devices from inmates due to costs; and (2) withhold medical devices from inmates in contradiction to their medical need.  In his deposition Savage testified that there were other inmates with sleep apnea who needed CPAP machines but were told that there was no money for the machines.  At this stage of the proceedings, this evidence is sufficient to raise a genuine dispute of material fact as to whether Wexford had a policy or custom which caused a deprivation of Savage's rights.

   Wexford further asserts that even assuming it chose to implement a policy to reduce medical device costs, this decision would not give rise to an Eighth Amendment claim.  In support Wexford cites Brown v. Beard, 445 F. App'x 453 (3d Cir. 2011), and Winslow v. Prison Health Services, Inc., 406 F. App'x 671 (3d Cir. 2011).  In both of those cases the prisoner-plaintiffs challenged the defendants' decision to treat a hernia with a support belt and medication rather than surgery due in part to cost concerns.  Brown, 445 F. App'x at 455-56; Winslow, 406

F. App'x at 674-75. Our Court of Appeals held that both prisoners failed to state a claim for deliberate indifference due to treatment of the hernias and in doing so stated that prisoners "do not have a constitutional right to limitless medical care, free of cost restraints under which law-abiding citizens receive treatment." Winslow, 406 F. App'x at 674. These cases are inapposite to the claim presented by Savage, which involves a potentially life-threatening condition that was left completely untreated for months by Wexford.

Wexford is not entitled to summary judgment based on its argument that no evidence exists of an official policy or custom of Wexford to deprive inmates of CPAP machines.